UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X

JOSE CARLOS SANJUAN PAZ,              :    Case No.: _____

                                     :

           Plaintiff,            :    **COMPLAINT**

                                       :

     -against-                    :    **DEMAND FOR JURY TRIAL**

                                       :

SORL AUTO PARTS, INC., XIAO PING      :
ZHANG, XIAO FENG ZHANG, SHU PING    :
CHI, YU HONG LI, HUI LIN WANG, JIN      :
BAO LIU, and JIANG HUA FENG,          :

                                       :

          Defendants.          :

------------------------------------- X

Plaintiff Jose Carlos Sanjuan Paz ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This is an action brought by Plaintiff against SORL Auto Parts, Inc. ("SORL" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with SORL, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Merger") between SORL and Ruili International Inc., through its affiliates ("Ruili").

2.      On November 29, 2019, SORL entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which the Company's shareholders will receive $4.72 in cash for each share of SORL common stock they own (the "Merger Consideration").

3.      On January 6, 2020, in order to convince SORL shareholders to vote in favor of the Proposed Merger, Defendants authorized the filing of a materially incomplete and misleading preliminary proxy statement (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for SORL; and (ii) the valuation analyses performed by SORL's financial advisor Duff & Phelps, LLC ("Duff & Phelps"), in support of their fairness opinion.

5.      The special meeting of SORL shareholders to vote on the Proposed Merger is forthcoming (the "Shareholder Vote").  It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the Shareholder Vote so Plaintiff can cast an informed vote and properly exercise his corporate suffrage rights.

6.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Merger until the material information discussed herein is disclosed to SORL shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8.      Personal jurisdiction exists over each Defendant either because the Defendant

conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman* 764 F.2d 1309, 1305 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* At 1316.

9.      Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, SORL's common stock trades on Nasdaq, which is headquartered in this District, rendering venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

10.      Plaintiff is, and at all relevant times has been, a holder of SORL common stock.

11.      Defendant SORL develops, manufactures and distributes automotive brake systems. The Company's common stock trades on the Nasdaq under the ticker symbol "SORL".

12.      Individual Defendant Xiao Ping Zhang is, and has been at all relevant times, the Chief Executive Officer of the Company and Chairman of the Board.

13.      Individual Defendant Xiao Feng Zhang is, and has been at all relevant times, an Executive Vice President, the Chief Operating Officer, and a director of SORL.

14.      Individual Defendant Shu Ping Chi is, and has been at all relevant times, an

Executive Vice President and a director of SORL.

15.     Individual Defendant Yu Hong Li is, and has been at all relevant times, the Lead Independent Director of SORL.

16.     Individual Defendant Hui Lin Wang is, and has been at all relevant times, the Vice Chairman of the Board. Lorber is also the president, chief executive officer, and director of Vector Group, the Company's largest shareholder.

17.     Individual Defendant Jin Bao Liu is, and has been at all relevant times, a director of SORL.

18.     Individual Defendant Jiang Hua Feng is, and has been at all relevant times, a director of SORL.

19.     The Individual Defendants referred to in ¶¶ 12-18 are collectively referred to herein as the "Individual Defendants" and/or the "Board", and together with SORL they are referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### I.     Background and the Proposed Merger

20.     SORL through its interests in the Ruili Group Ruian Auto Parts Co., Ltd., a Sino-foreign joint venture, develops, manufactures and distributes automotive brake systems and other safety related auto parts to automotive original equipment manufacturers (OEMs), and the related aftermarket both in China and abroad. The Company operates through two segments: Commercial Vehicle Brake Systems and Passenger Vehicle Brake Systems. The Company's products are principally used in different types of commercial vehicles, such as trucks and buses, and include a range of products covering approximately 65 categories and over 2,000 specifications in automotive brake systems. The Company sells its products to approximately 70 vehicle

4

manufacturers, including all of the primary truck manufacturers in China.

21.      Ruili is a Delaware corporation formed by Mr. Xiaoping Zhang solely for the purpose of entering into the Merger Agreement and consummating the transactions contemplated by the Merger Agreement. Ruili Group Co., Ltd. ("Ruili Group") engages in the development, production, and sale of various kinds of automotive parts. Ruili Group also operates a hotel property and invests in the development of real property in China. Ruili Group is a 10% shareholder of Ruili Group Ruian Auto Parts Co., Ltd., a principal operating subsidiary of the Company.

22.      On November 29, 2019, SORL issued a press release announcing the Proposed Merger, which states in relevant part:

**SORL Auto Parts Enters Into Definitive Merger Agreement for "Going Private" Transaction**

ZHEJIANG, China, Nov. 29, 2019 (GLOBE NEWSWIRE) -- SORL Auto Parts, Inc. (NASDAQ: SORL) ("SORL" or the "Company"), a leading manufacturer and distributor of automotive brake systems as well as other key safety-related auto parts in China, today announced that it has entered into an Agreement and Plan of Merger (the "Merger Agreement") with Ruili International Inc. ("Parent"), a Delaware corporation and formed on behalf of a consortium consisting of Mr. Xiao Ping Zhang, the Company's Chairman and Chief Executive Officer, Ms. Shu Ping Chi and Mr. Xiao Feng Zhang, directors of the Company, and Ruili Group Co., Ltd. (collectively, the "Consortium"), and Ruili International Merger Sub Inc. ("Merger Sub"), a Delaware corporation and a wholly-owned subsidiary of Parent.

Pursuant to the Merger Agreement, subject to the satisfaction or waiver of all of the conditions to closing:

●      Merger Sub will merge with and into the Company, with the Company will thereafter continue as the surviving corporation and a wholly-owned subsidiary of Parent (the "Merger"); and

●      at the effective time of the Merger, each share of common stock of the Company issued and outstanding immediately prior to the effective time will be automatically canceled and converted into the right to receive US$4.72 in cash (the "Merger Consideration"), without interest, except for (i) shares of common stock beneficially owned by members of the Consortium or their affiliates, which will be

cancelled for no consideration, and (ii) shares of common stock owned by stockholders who have validly exercised and not effectively withdrawn or lost their rights to dissent from the Merger pursuant to Section 262 of the General Corporation Law of the State of Delaware, which will be cancelled at the effective time of the Merger for the right to receive the fair value of such shares determined in accordance with the provisions of Section 262 of the General Corporation Law of the State of Delaware.

The Merger Consideration of US$4.72 per share of common stock represents approximately a 26.2% premium over the closing price of the Company's common stock as quoted by NASDAQ Global Select Market (the "NASDAQ") on April 24, 2019, the last trading day prior to the date that the Company received a non-binding "going private" proposal from the Consortium. The Merger Consideration also represents an increase of approximately 10.8% over the US$4.26 per share initially offered by members of the Consortium in their initial "going-private" proposal on April 25, 2019 and a premium of approximately 39.2% over the Company's closing price of US$3.39 per share of common stock on November 27, 2019, the last trading day prior to this announcement.

As of the date of the Merger Agreement, the members of the Consortium other than Ruili Group Co., Ltd., beneficially own in the aggregate approximately 58.83% of the total outstanding common stock of the Company and have agreed to vote the shares of common stock beneficially owned by them in favor of the Merger.

The Board of Directors of SORL, acting on the recommendation of a special committee of independent and disinterested directors (the "Special Committee"), unanimously approved the Merger Agreement and the transactions contemplated by the Merger Agreement, including the Merger, and resolved to recommend that the Company's stockholders vote to authorize and approve the Merger Agreement and the and the transactions contemplated by the Merger Agreement, including the Merger. The Special Committee, which is composed solely of independent directors of the Company who are unaffiliated with any member of the Consortium or management of the Company, exclusively negotiated the terms of the Merger Agreement with the Consortium with the assistance of its independent financial and legal advisors.

The Merger, which is currently expected to close during the second quarter of 2020, is subject to various closing conditions, including the adoption of the Merger Agreement by the Company's stockholders. Pursuant to the Merger Agreement, adoption of the Merger Agreement and the transactions contemplated by the Merger Agreement, including the Merger, by the Company's stockholders requires the affirmative vote of (i) the holders of at least a majority of the Company's outstanding shares of common stock and (ii) the holders of at least a majority of the Company outstanding shares of common stock other than the shares of common stock held by members of the Consortium. The Company will call a meeting of stockholders for the purpose of voting on the adoption of the Merger Agreement

and the transactions contemplated by the Merger Agreement as soon as practicable. If completed, the Merger will, under laws of the State of Delaware, result in the Company becoming a privately-held company and the Company Common Stock would no longer be listed on the NASDAQ.

23.     The Merger Consideration represents inadequate compensation for SORL shares. Indeed, SORL has outperformed earnings expectations and announced positive financial results in multiple, consecutive quarters leading up to the Proposed Merger. Given the Company's strong recent financial performance and bright economic outlook, it is imperative that shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Proxy, which is necessary for shareholders to properly exercise their corporate suffrage rights and cast an informed vote on the Proposed Merger.

**II.     The Proxy Omits Material Information**

24.     On January 6, 2020, Defendants filed the materially incomplete and misleading Proxy with the SEC.  The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision in connection with the Proposed Merger.

The Misleadingly Incomplete Financial Projections

25.     First, the Proxy omits critical financial projections, including the free cash flow projections for SORL. Defendants elected to summarize the projections for SORL but they excised and failed to disclose the free cash flow projections. This omission renders the summary of the projections table on page 52 of the Proxy materially incomplete and provide a misleading valuation picture of SORL.

26.     There are significant differences between free cash flow projections—widely

recognized as the most important valuation metric when it comes to valuing a company and its stock—and the projections that are included in the Proxy. Net Income projection metrics are not sufficient analogs for cash flow projections. Well settled principles of corporate finance and valuation dictate that the value of companies and their stock should be premised upon the company's projected future cash flows.[1,2] A company's net income is a quite arbitrary figure obtained after assuming certain accounting hypotheses regarding expenses and revenues.  On the other hand, free cash flow is an objective measure, a single figure that is not subject to any personal criterion.[3]  As a leading financial expert explains:

> The classic definition of net income (revenues for a period less the expenses that enabled these revenues to be obtained during that period), in spite of its conceptual simplicity, is based on a series of premises that seek to identify which expenses were necessary to obtain these revenues. This is not always a simple task and often implies accepting a number of assumptions. Issues such as the scheduling of expense accruals, the treatment of depreciation, calculating the product's cost, allowances for bad debts, etc., seek to identify in the best possible manner the quantity of resources that it was necessary to sacrifice in order to obtain the revenues. Although this "indicator", once we have accepted the premises used, can give us adequate information about how a company is doing, the figure obtained for the net income is often used without full knowledge of these hypotheses, which often leads to confusion.

"Free cash flow is accurate because it shows the cash coming in and the cash going out whereas with net income, one has to worry about accrual accounting, non-cash charges such as depreciation and most importantly, heavy manipulation. The main advantage that free cash flow has over

---

[1]     Pratt, Shannon. "Net Cash Flow: The Preferred Measure of Return." Cost of Capital. 16.

[2]     "Morningstar's Approach to Equity Analysis and Security Valuation." The Valuation Handbook: Valuation Techniques from Today's Top Practitioners. Ed. Rawley Thomas and Benton E. Gup. Hoboken: John Wiley & Sons, 2010. 305. ("We use a discounted cash flow (DCF) approach to arrive at our intrinsic value estimates because it allows us to separate economic reality from accounting-based noise.").

[3]     Pablo Fernández, *Cash flow is a Fact. Net income is just an opinion*, (October 17, 2008), http://csinvesting.org/wp-content/uploads/2015/02/Cash-Flow-vs.-NI.pdf, also found as *Valuation Methods and Shareholder Value Creation*, Chapter 9 Cash Flow and Net Income, 2002 Academic Press, San Diego, CA.

earnings is that it can't be manipulated as much."[4] Simply stated, net income is an accounting number used for reporting purposes, but free cash flow is the actual amount of cash available to investors.

27.     In light of the significant differences between the free cash flow projections and the figures disclosed in the Proxy, the table of projections on page 52 of the Proxy is materially incomplete and misleading. By failing to include the free cash flow projections, the table provides a materially incomplete and misleading overall valuation summary of SORL.  In other words, free cash flow projections are irreplaceable when it comes to fully and fairly understanding a company's projections and value.

28.     Unlike poker where a player must conceal his unexposed cards, the object of a proxy statement is to put all one's cards on the table face-up. In this case only some of the cards were exposed—the others were concealed. If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. Accordingly, Defendants have disclosed some of the projections but have omitted the free cash flow projections. This omission renders the summary of projections included in the Proxy misleadingly incomplete.

The Misleadingly Incomplete Summary of Duff & Phelps' Fairness Opinion

29.     The Proxy describes Duff & Phelps' fairness opinion and the various valuation analyses performed in support of their opinion.  Defendants concede the materiality of this

---

[4]     David Thomas, *Why Free Cash Flow Is Better Than Earnings*, Shares and Stockmarkets, (July 29, 2013), https://sharesandstockmarkets.com/free-cash-flow-v-earnings/.

information by citing to Duff & Phelps' fairness opinion and their valuation analyses among the factors the Board relied upon in making its recommendation to SORL shareholders. Proxy at 28; *see also* Proxy at 40 ("Set forth below is a summary of the *material* analyses performed by Duff & Phelps in connection with the delivery of its opinion to the special committee.") (emphasis added). However, the summary of Duff & Phelps' fairness opinion and analyses provided in the Proxy fails to include key inputs and assumptions underlying the analyses. Without this information, as described below, SORL shareholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Duff & Phelps' fairness opinion in determining how to vote on the Proposed Merger. *See* Proxy at 40 ("Considering the data below without considering the full narrative description of the financial analyses, including the methodologies and assumptions underlying the analyses, could create a misleading or incomplete view of Duff & Phelps' financial analyses."). This omitted information, if disclosed, would significantly alter the total mix of information available to SORL shareholders.

30.     In summarizing the *Discounted Cash Flow Analysis* prepared by Duff & Phelps, the Proxy fails to disclose the following key information used in the analysis: (i) SORL's free cash flow projections; (ii) the WACC/CAPM inputs underlying the discount rate range of 12.00% to 13.00%; and (iii) the actual terminal value calculated.

31.     These key inputs are material to SORL shareholders, and their omission renders the summary of the *Discounted Cash Flow Analysis* incomplete and misleading. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff,

Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate

discount rate, and the terminal value…" Id.  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can
> markedly affect the discounted cash flow value. For example, a change in the
> discount rate by one percent on a stream of cash flows in the billions of dollars can
> change the discounted cash flow value by tens if not hundreds of millions of
> dollars….This issue arises not only with a discounted cash flow analysis, but with
> each of the other valuation techniques.  This dazzling variability makes it difficult
> to rely, compare, or analyze the valuations underlying a fairness opinion unless full
> disclosure is made of the various inputs in the valuation process, the weight
> assigned for each, and the rationale underlying these choices. The substantial
> discretion and lack of guidelines and standards also makes the process vulnerable
> to manipulation to arrive at the "right" answer for fairness.  This raises a further
> dilemma in light of the conflicted nature of the investment banks who often provide
> these opinions.

Id. at 1577-78.

32.     Without the above-omitted information, including the free cash flow projections

SORL shareholders are misled as to the reasonableness or reliability of Duff & Phelps' analyses,

and unable to properly assess the fairness of the Proposed Merger. As such, these material

omissions render the summary of the *Discounted Cash Flow Analysis* included in the Proxy

misleadingly incomplete.

33.     In sum, the omission of the above-referenced, material information renders the

Proxy incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of

the foregoing material information prior to the Shareholder Vote, Plaintiff will be unable to cast

an informed vote regarding the Proposed Merger, and is thus threatened with irreparable harm,

warranting the injunctive relief sought herein

//

//

//

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act

34.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

36.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

37.     The omission of information from a proxy will violate Section 14(a) if other SEC regulations specifically require disclosure of the omitted information.

38.     Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Merger.  Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) financial projections for SORL; and (ii) the valuation analyses performed by Duff & Phelps in support of their fairness opinion.

39.     In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

40.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger; indeed, the Proxy states that Duff & Phelps reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided by Duff & Phelps, as well as their fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the financial projections and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review Duff & Phelps' analyses in connection with their receipt of the fairness opinion, question Duff & Phelps as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the

Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

41.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

42.     SORL is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

43.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote on the Proposed Merger if such misrepresentations and omissions are not corrected prior to the special meeting of SORL shareholders.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

44.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45.     The Individual Defendants acted as controlling persons of SORL within the

meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

46.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger.  They were thus directly involved in preparing this document.

48.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

49.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a)

of the Exchange Act.

50.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

51.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the special meeting of SORL shareholders to vote on the Proposed Merger or consummating the Proposed Merger, until the Company discloses the material information discussed above which has been omitted from the Proxy;

B.     Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.     Granting such other and further relief as this Court may deem just and proper.

//

//

//

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


Dated: February 14, 2020                **MONTEVERDE & ASSOCIATES PC**

                                        By:   */s/ Juan E. Monteverde*
                                            Juan E. Monteverde (JM-8169)
                                            The Empire State Building
                                            350 Fifth Avenue, Suite 4405
                                            New York, NY 10118
                                            Tel: (212) 971-1341
                                            Fax: (212) 202-7880
                                            Email: jmonteverde@monteverdelaw.com

                                            *Attorneys for Plaintiff*